### STEEL–CLAD BATH CO. v. DAVISON.

(Circuit Court of Appeals, Second Circuit. July 21, 1897.)

PATENTS—INVENTION—BATH TUBS.

> The Booth patent, No. 458,995, for a bath tub composed of a smooth sheet-metal casing, having a lining of copper or other light, flexible material, hammered, rolled, or pressed into close contact therewith, is void for want of invention, in view of Holmes patent, No. 189,559. 80 Fed. 904, affirmed on application for rehearing.

On Application for Rehearing.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is a petition by the complainant and appellee in the above-entitled cause for a rehearing of the appeal which was recently decided by this court in favor of the appellant. 80 Fed. 904. The earnest belief of the counsel for the complainant in the strength of its patent, and that the court was led astray by a misapprehension of the mechanical facts of the case, induce us to restate our views respecting the patentable character of the invention. The bath tubs most frequently in use before the date of the Booth invention in houses which had a permanent water supply and drainage system were, as Mr. Benjamin, one of the complainant's experts, says, "commonly made of thin metal, usually copper, arranged in what was practically a wooden box, permanently fastened in place." The wooden cases possessed alleged dangers, some of which were a tendency to decay, and consequently to produce or to harbor germ life. To eliminate this wooden box, the same expert says, was one of his (the patentee's) principal objects. He substituted a sheet-steel casing for the wooden casing, and a lining of thin copper pressed, as the pre-existing lining had been, into close contact with the exterior casing. Claim 1 describes the invention which he desired to secure as "a bath tub composed of a smooth sheet-metal casing having a lining of copper, aluminum, or other light, flexible material, hammered, rolled, or pressed into close contact with its outer casing, substantially as and for the purpose specified." The questions which naturally first presented themselves were the

novelty and the patentability of the improvement described in this claim. One of the methods of making bath tubs which existed before the date of the Booth invention was shown in the Holmes portable tub, patented April 17, 1877, which consisted of a zinc body and a tin lining, made into a compound sheet. "The sheet was formed by uniting a thin sheet of tin and a thicker sheet of zinc by rolling the two sheets together, soldering them face to face, or otherwise producing a homogeneous sheet having tin for a facing and zinc for the body." The difference which the complainant's experts pointed out between the two tubs was that the Holmes tub was made of a homogeneous sheet having one metal for the facing and other metal for body, whereas the Booth structure was an inner tub of thin metal resting in contact with and supported by an outer steel casing. Upon the point of homogeneity, the court thought that the independency of the two sheets of metal was not regarded by the patentee as important, or, in the language of the opinion, that the distinction "was not recognized" in the original Booth specification, which said that his "lining was hammered, rolled, or pressed, so as to be practically integral with its outer casing." The opinion further said that "the body of each tub can be made by rolling the two sheets together." The first misapprehension of facts which the complainant thinks existed was that the two methods of rolling were the same, whereas the Holmes sheets were placed together flatwise, and, as thus superposed, were united together, while the lining sheet of the Booth tub, when flat, was passed between rolls under pressure in such wise as to bend or curl it into curved form. The second alleged misapprehension was a failure to understand that the Booth tub was made of two independent sheets of metal, one nested within the other, and in mechanical contact only with each other. The language of the opinion probably justifies the complainant's belief that this misapprehension existed; but the fact that the copper lining was nested within the outer steel casing, and that the sheets were not homogeneous, was both apparent and was well understood. The court was also aware that the mechanical process by which a flat sheet of copper was hammered, rolled, or pressed so as to become curved and conform to the curvatures of an exterior sheet-steel case was not the same as that by which two flat sheets of metal, having been united together, were bent into a tub, but was also of opinion that under the Booth patent the particular mechanical means of union were not of patentable importance. Booth's actual invention consisted in making a bath tub with a sheet-steel case and a copper lining, instead of a tub with a wooden case and a copper lining, and he nested the lining within the exterior case as the wooden case had been lined; but the patentee deemed himself entitled to a broader patent, and claim 1 was not limited to any particular kind of metal, or to any particular manner by which the two sheets were to be pressed, hammered, or rolled together. They could be brought together by the nesting process, as in the wooden bath tub and in the William Gee patent of October 22, 1867, or by bending the combined sheets into the required shape by means of suitable rollers, as in the Willis L. Brownell patent of October 21, 1879, or by bending two sheets which had been united so as to be

homogeneous as in the Holmes patent. The complainant desires that the claim should be so construed that the completed metallic tub must be a water chamber nested within an outer sheet-metal casing. The objection to that construction is that the patentee took a patent for a metallic tub of any two kinds of sheet metal, which were to be brought together in close contact by pressing, hammering, or rolling. The application for rehearing is denied.